IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSHA VANHOOK<br>  Plaintiff,<br><br>  v.<br><br>THOMAS JEFFERSON<br>UNIVERSITY HOSPITAL<br>  Defendant. | Case No.: |

## COMPLAINT

1. Plaintiff Marsha Vanhook (hereinafter "Plaintiff"), hereby files this Complaint against Defendant Thomas Jefferson University Hospital (hereinafter "Defendant"), alleging that her rights, pursuant to the Americans with Disabilities Act ("ADA"), and its 2008 amendments, 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act, the Family Medical Leave Act, have been violated, and avers as follows:

## PARTIES

2. Plaintiff resides at 8 Hedwig Court Voorhees, NJ 08043. Plaintiff is a 44-year-old white female who suffers from multiple mental health issues.

3. Defendant is an institution that is incorporated in Pennsylvania and provides services in the City of Philadelphia, Pennsylvania, and has an address of 111 South 11th Street Philadelphia, PA 19107.

## JURISDICTION AND VENUE

4. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

5. Subject-Matter Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331, and under the Americans with Disability Act and its Amendments ("ADA") 42 U.S.C. § 12101 *et seq.* and Civil Rights Act and FMLA

6. This Court may properly maintain Personal Jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

7. Venue is appropriately laid in the United States District Court for the Eastern District of

Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

9. Plaintiff exhausted her administrative remedies, as required under federal and state law.

10. Specifically, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 12, 2020.

11. The EEOC issued a Right to Sue on February 24, 2021. This Complaint is being filed within ninety (90) days of Plaintiff's receipt of Right to Sue.

## FACTS

12. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

13. Defendant is an entity engaged in an industry or activity affecting commerce which employed 15 or more employees in all of its facilities each working day during each of 20 or more calendar workweeks in the current or preceding year.

14. Plaintiff began her employment with Defendant on April 10, 2019 as a per diem Patient Service Representative ("PSR") at their location at 400 Laurel Oak Road, Voorhees, NJ. Her immediate Supervisor was Walter Harris ("Mr. Harris").

15. On August 5, 2019, Plaintiff was promoted to Lead PSR of the float pool- a full-time position- after only four (4) months of being with Defendant. The speed of her promotion indicates the trust Defendant had in her professional abilities and the value they felt she could bring to their organization.

16. On or about April 2020, Plaintiff's son made a suicide attempt that was publicized in the news. The trauma from this experience and having to help her son recover mentally and physically caused Plaintiff to develop mental health issues.

17. On April 20, 2020, Plaintiff visited a physician who diagnosed her with several mental health disabilities and prescribed her five (5) different medications which she began taking immediately. Her medications and psychiatric visits were primarily covered under her medical insurance policy with Defendant.

18. On May 12, 2020, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") for a period of twelve (12) weeks. This request was endorsed by her physician.

19. On May 23, 2020, Defendant approved Plaintiff's request for medical leave, which was scheduled to commence on June 1, 2020.

20. On May 31, 2020, the day before her medical leave was to commence, Plaintiff made a post ("Post") on her personal Facebook page in response to recent political and social events taking place in both Pennsylvania and across the country.

21. In the Post, Plaintiff lamented that people were taking advantage of protests and demonstrations to engage in looting in the aftermath of events involving police brutality. She did not mention a specific race of people in the Post and elaborated in comments under the Post that she condemns all people who engage in looting, regardless of race. It is worth noting that this Post was made at approximately 2:45am, a time when Plaintiff was sedated due to the prescribed medication that she takes at night for her disabilities. The medication affected her judgment.

22. Following her Post, two of Defendant's employees, Ashley Pizarro ("Ms. Pizarro") and Vanna Jones ("Ms. Jones"), engaged in harassment of and gossip about Plaintiff, both at work and on Facebook ("these Actions"). Ms. Pizarro is a PSR who worked in an office where Plaintiff was sometimes placed. Ms. Jones is a float Medical Assistant who Plaintiff occasionally managed. Plaintiff maintains that she had professional relationships with Ms. Pizarro and Ms. Jones prior to this incident and did not know either of them had any problems with her.

23. The documented incidents of harassment following Plaintiff's Post are as follows. Plaintiff believes that Ms. Jones and/or Ms. Pizarro were the initiator(s) of these Actions, or collaborated with others they incited to commit such actions:

    - Posting Facebook comments from Ms. Jones's profile laced with profanity and pejorative messages, calling Plaintiff a "Donald Trump lover," and a "Blue Lives Matter ass-licker;"
    - Sending a text message to Plaintiff's phone saying, "[W]hite bread will now be referred as privilege loaf" on July 3, 2020;
    - Ms. Pizarro making repeated comments on Plaintiff's Post, disparaging her views;
    - Signing up Plaintiff for Democratic National Convention ("DNC") spam text messages, despite Plaintiff not being a Democrat or having any desire to receive DNC information;
    - Completing a Pornhub application was with Plaintiff's email and information;
    - Making attempts to break into Plaintiff's Facebook account were on nine (9) separate occasions between 7/23/20-7/26/20;
    - Making calls to other office staff who informed Plaintiff that her name was being circulated around the office workplace in a disparaging manner.

24. Ms. Jones and Plaintiff are not friends on Facebook, so Ms. Jones went out of her way to engage and harass Plaintiff on social media.

25. On June 18, 2020, one of Plaintiff's staff members, Shiness Berry ("Ms. Berry"), emailed Defendant's management to state that employees of Defendant talk about how Plaintiff dresses and question the legitimacy of the issues that caused her to go out on leave. Ms. Berry noted that a Black MA float person stated, "if they don't fire [Plaintiff] then I quit." Plaintiff has reason to believe this statement was made by Ms. Jones. Plaintiff also has reason to believe that Ms. Jones and Ms. Pizarro initiated negative conversations about her in the workplace while she was on medical leave and ultimately threatened to quit if Plaintiff was not fired.

26. After her Post, Plaintiff's mental health began to deteriorate further in response to the stalking and harassment she was receiving. This in turn caused her to miss several psychiatric appointments. The harassment and stalking also forced Plaintiff to have to change her name on Facebook, change her profile picture to a picture of her dogs instead of one where she could be identified, and block all employees of Defendant from her page.

27. On June 20, 2020, Plaintiff complained to Defendant's Human Resources ("HR") Department through text that she was being harassed online by Ms. Jones and provided them with a screenshot of Facebook notifications showing that Ms. Jones was commenting on her Post. She also informed HR that she heard people were talking about her at work regarding the Post, and explained that she did not need this type of stress while she was on medical leave and attempting to care for her son. In response to these texts, Robin Herman ("Ms. Herman"), an HR Business Partner at Defendant, called Plaintiff to assure her that everything would be okay and that no action would be taken against her for her Post.

28. On July 1, 2020, Plaintiff was walking through a local recreational area as part of her daily wellness routine while on medical leave when she ran into Mr. Harris, her immediate supervisor. When they approached each other, Mr. Harris smiled and said to her: "Oh I know all the bullshit going on" and then laughed. When she tried to question him further, Mr. Harris said he could not talk about it, and that all he could say was that she should enjoy her leave and that he will see her back in the office on August 31. He then laughed again.

29. Later in the day on July 1, 2020, Plaintiff received a call from Ms. Herman and Brian McNicholas ("Mr. McNicholas"), the Director of Clinical Initiatives & Process Improvement at Defendant. They told Plaintiff that Defendant had ultimately decided to terminate her for violating Defendant's code of conduct through her Post. Prior to this termination, Defendant's personnel did not have any formal discussions with her about her Post, nor did they engage in any attempts at disciplinary actions. The termination was sudden and unexpected, and Plaintiff never received a formal written letter of her termination.

30. Defendant was aware that Plaintiff was on medical leave at the time of her termination, and also of the correlation between her medical problems and her son's publicized

suicide attempt. They were also aware that Plaintiff was relying on her insurance coverage through Defendant to receive treatment. Additionally, and reprehensibly, Defendant prematurely ended Plaintiff's insurance coverage a month early by inaccurately listing her termination date as June 30 instead of July 1. Defendant's premature termination forced Plaintiff to have to cancel several psychiatric appointments that had been scheduled during the month of July, which further adversely impacted Plaintiff's mental health.

31. To the best of Plaintiff's knowledge, both Ms. Pizarro and Ms. Jones are still employed with Defendant, and to Plaintiff's knowledge have not suffered any disciplinary actions.

32. Plaintiff has previously reported to HR incidents of racial insensitivity conducted by other employees of Defendant and has been questioned as a witness regarding racial insensitivity reports filed by other employees. Throughout these incidents, Plaintiff remained professional and went out of her way to bring these issues to supervision's knowledge discreetly so as not to disrupt office workplace dynamics. For other incidents of racial insensitivity, many of which involved Black employees, the employees were given warnings or sent to sensitivity training. None of them were abruptly terminated like Plaintiff.

33. Since her termination, Plaintiff has filed for unemployment compensation and has been unable to secure a new position. This discrimination has also caused Plaintiff's mental health issues to be exacerbated and has caused her to experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

34. **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT I
## DISCRIMINATION VIOLATION of the AMERICANS WITH DISABILITIES ACTS, 42 U.S.C. § 12101 *et seq.*

35. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

36. Plaintiff is an individual with a qualified disability.

37. Defendant violated the ADA by subjecting Plaintiff to discrimination on the basis of her actual and/or perceived disabilities and/or records of impairment.

38. Defendant was aware of Plaintiff's disabilities yet failed to accommodate her disabilities when they terminated her without warning or any form of progressive discipline while she was on medical leave and without regard for the fact that she was receiving treatment through Defendant's health insurance benefits.

39. Defendant discriminated against Plaintiff and failed to accommodate her disabilities when they prematurely and reprehensibly cut off her medical insurance a month early despite knowing that she was actively receiving treatment and medication for her disabilities through her policy with Defendant.

40. Defendant failed to accommodate Plaintiff when they terminated her for a Facebook Post that she made on her personal computer while under the influence of several prescribed medications that she was taking for disabilities of which Defendant was aware.

41. Defendant's conduct caused Plaintiff to experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

42. Plaintiff prays that Defendant be required to provide all appropriate remedies available under the ADA.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

43. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

44. Plaintiff is a white female.

45. Plaintiff made an observational Facebook Post during a period of social unrest outside of work hours and on her personal computer and was accused by coworkers of being racially insensitive.

46. Plaintiff was subjected to discrimination on the basis of race when Defendant chose to terminate her from employment for the purpose of not upsetting their Black employees.

47. Plaintiff was subjected to this adverse action despite other employees being accused of racial insensitivity in the actual workplace and not suffering disciplinary action to the level of termination.

48. Defendant's conduct caused Plaintiff to experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

49. Plaintiff prays that Defendant be required to provide all appropriate remedies available under Title VII of the Civil Rights Act.

## COUNT III
## FMLA VIOLATION

50. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

51. On May 12, 2020, Plaintiff applied for leave under the FMLA for a period of twelve (12) weeks. This request was approved by Defendant on May 23, 2020, and Plaintiff's leave commenced on June 1, 2020.

52. Defendant violated the FMLA by interfering with Plaintiff's right to take short term disability medical leave for a serious health condition by terminating her employment four (4) weeks into her twelve (12) month medical leave.

53. Defendant's conduct caused Plaintiff to experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages (where applicable);

(c) Liquidated damages (where applicable);

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

Respectfully submitted,

BY: /s/ Faye Riva Cohen
LAW OFFICE OF FAYE RIVA COHEN, P. C.
FAYE RIVA COHEN, ESQUIRE
Attorney ID: 18839
2047 Locust Street
Philadelphia, PA 19103
Attorney for Plaintiff

Date: _____
May 20, 2021

## VERIFICATION

I, Marsha C. Vanhook, hereby verify that I am the Plaintiff in the within Complaint and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements are made to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

*/s/ Marsha C. Vanhook*
Marsha C. Vanhook
Plaintiff

Date: May 20, 2021